# United States District Court

**EASTERN** _____ **DISTRICT OF CALIFORNIA**

In the Matter Of the Search of
(Name, address or brief description of person or property to be searched)

**Information associated with the "LJCROW006@GMAIL.COM" email account and stored at premises controlled by Google.**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

**CASE NUMBER:** 2:14-SW 681 CKD

| **Special Agent Ryan Smith** | being duly sworn depose and say: |

I am a(n) **Special Assistant United States Marshal** and have reason to believe
Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

**See Attachment A**

in the **Eastern** District of **California**

## FILED

**DEC 1 0 2014**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

there is now concealed a certain person or property, namely (describe the person or property)

**See Attachment B**

which is (give alleged grounds for search and seizure under Rule 41(c) of the Federal Rules of Criminal Procedure):
"Evidence of a crime, contraband, fruits of crime, or other items illegally possessed."

in violation of Title **18** United States Code, Section(s) **2251 and 2252.**

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
**Signature of Affiant**

Sworn to before me, and subscribed in my presence

**December 10, 2014** _____ at   **Sacramento, California**
Date                                                                            City and State

**Hon. Carolyn K. Delaney, U.S. Magistrate Judge** _____
Name and Title of Judicial Officer                         Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, RYAN SMITH, being duly sworn, depose and state:

1. I am a Detective with the Sacramento County Sheriff's Department (SSD), presently assigned to the Sacramento Internet Crimes Against Children (ICAC) Task Force. I have been assigned to the Sacramento ICAC Task Force since January 2014. I have been employed by the SSD since January 1999. In January 2014, I was cross designated as a Special Deputy United States Marshal. As part of my daily duties as a Detective, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252. I have received training in the area of child pornography and child exploitation and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have attended numerous courses in the investigation of child sexual exploitation, child pornography, and online child sexual exploitation.  In the course of my duties I have been the investigating officer and Affiant of over 20 applications for search warrants relating to child pornography investigations.

2. I also have provided instruction to both law enforcement and civilians in the area of Internet security, online child exploitation, as well as social networking sites. I have received extensive training in the areas of computers and computer forensics. I have certifications from the Robert Presley Institute of Criminal Investigation in the investigation of Computer Crimes.

3. This affidavit is made in support of an application for a Search Warrant pursuant to Title 18, U.S.C. § 2703(a) and 2703(b)(1)(A) and 2703(c)(1)(A) to require GMAIL

(hereinafter "PROVIDER"), electronic communications service providers, to provide the contents of electronic communications that were placed or stored in the PROVIDER'S computer systems in directories of files owned or controlled by the account listed below, one of its customers or subscribers, at any time after April 1, 2014, up through and including the date of this search warrant. Based on the investigation in this case, evidence concerning violations of 18 U.S.C. 2422(b), which makes it a crime to use the mail or any facility of interstate or foreign commerce to knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, or attempt to do so, may be contained in the opened and unopened e-mails in the files owned or controlled by the e-mail account **LJCROW006@GMAIL.COM** (hereinafter "SUBJECT ACCOUNT"), which is further described in the following paragraphs and in Attachment A.

4.  This Court has jurisdiction to issue the requested warrant pursuant to 18 U.S.C. 2703(a) because it is a court with jurisdiction over the offense under investigation.

5.  Pursuant to 18 U.S.C. 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

6.  The purpose of this application is to seize evidence of violations of 18 U.S.C. 2422(b), which makes it a crime to use the mail or any facility of interstate or foreign commerce to knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, or attempt to do so.

7.  I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and based upon my conversations with other law

enforcement officers who have engaged in numerous investigations involving child pornography.

8. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2422 (b) are located in the SUBJECT ACCOUNT. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

9. The investigation has revealed that the SUBJECT ACCOUNT is believed to have uploaded suspected child pornography to their account.

## THE INTERNET and DEFINITIONS OF TECHNICAL TERMS PERTAINING TO COMPUTERS

10. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the

---

[1] Computer: The term "computer" is defined by 18 U.S.C. § 1030 (e) (1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

Internet (through a university, an employer, or a commercial service such as an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit web sites (see definition of "web sites" below), and make purchases on the web sites.

11. Set forth below are some definitions of technical terms, used throughout this Affidavit pertaining to the Internet and computers more generally:

   a. Computer system and related peripherals, and computer media: As used in this Affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including but not limited to, JPG, GIF, TIF, AVI, and MPEG.

   b. Domain Name: Domain names are common, easy to remember names associated with an Internet Protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identified parts of an organization. Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the United States government, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization; for

example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

c. <u>Internet Service Providers (ISPs) and the Storage of ISP Records</u>: Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password. ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of

14-260661
305I-SC-

electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage." See 18 U.S.C. § 2510 (15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long-term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." See 18 U.S.C. § 2711(2).

## DEFINITION OF CHILD PORNOGRAPHY AND HARMFUL MATTER

12. "Child Pornography" includes the definition found at 18 U.S.C. § 2256(8), and is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

13. As used in this affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

14. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

14-260661
305I-SC-                                    6

15. "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

16. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

## COMPUTERS AND CHILD PORNOGRAPHY

17. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

18. In addition, based upon my own knowledge, training, and experience in child
exploitation and child pornography investigations, and the experience and training
of other law enforcement officers with whom I have had discussions, the
development of computers has also revolutionized the way in which child
pornography collectors interact with, and sexually exploit, children. Computers
serve four basic functions in connection with child pornography: production,
communication, distribution, and storage. More specifically, the development of
computers has changed the methods used by child pornography collectors in these
ways:

    a.  Production: Producers of child pornography can now produce both still and
moving images directly from a common video or digital camera. The
camera is attached, using a device such as a cable, or digital images are
often uploaded from the camera's memory card, directly to the computer.
Images can then be stored, manipulated, transferred, or printed directly from
the computer. Images can be edited in ways similar to how a photograph
may be altered. Images can be lightened, darkened, cropped, or otherwise
manipulated. The producers of child pornography can also use a device
known as a scanner to transfer photographs into a computer-readable format.
As a result of this technology, it is relatively inexpensive and technically
easy to produce, store, and distribute child pornography. In addition, there is
an added benefit to the pornographer in that this method of production does
not leave as large a trail for law enforcement to follow.

    b.  Communication: The Internet allows any computer to connect to another
computer. By connecting to a host computer, electronic contact can be made
to literally millions of computers around the world. A host computer is one
that is attached to a network and serves many users. Host computers are
sometimes operated by commercial ISPs, such as America Online ("AOL")
and Microsoft, which allow subscribers to dial a local number and connect
to a network which is, in turn, connected to the host systems. Host

computers, including ISPs, allow e-mail service between subscribers and
sometimes between their own subscribers and sometimes between their own
subscribers and those of other networks. In addition, these service providers
act as a gateway for their subscribers to the Internet or the World Wide
Web.

c. <u>Distribution</u>: The Internet allows users, while still maintaining anonymity, to
easily locate (i) other individuals with similar interests in child pornography;
and (ii) web sites that offer images of child pornography. Child pornography
collectors can use standard Internet connections, such as those provided by
businesses, universities, and government agencies, to communicate with
each other and to distribute child pornography. These communication links
allow contacts around the world as easily as calling next door. Additionally,
these communications can be quick, relatively secure, and as anonymous as
desired. All of these advantages, which promote anonymity for both the
distributor and recipient, are well known and are the foundation of
transactions between child pornography collectors over the Internet.
Sometimes the only way to identify both parties and verify the
transportation of child pornography over the Internet is to examine the
recipient's computer, including the Internet history and cache[2] to look for
"footprints" of the web sites and images accessed by the recipient.

d. <u>Storage</u>: The computer's capability to store images in digital form makes it
an ideal repository for child pornography. A single floppy disk can store
dozens of images and hundreds of pages of text. The size of the electronic
storage media (commonly referred to as a hard drive) used in home
computers has grown tremendously within the last several years. Hard
drives with the capacity of 80 gigabytes are not uncommon. These drives
can store thousands of images at very high resolution. Magnetic storage
located in host computers adds another dimension to the equation. It is

---

[2] "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web
site accessed by the user in order to allow the user speedier access to and interaction with that web site.

possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## GOOGLE

19. Based on my training and experience, I have learned that GOOGLE is an e-mail service which is available free of charge to Internet users. GOOGLE e-mail addresses typically end with "@gmail.com." Subscribers obtain an account by registering on the Internet with GOOGLE. GOOGLE requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information; GOOGLE does not verify the information provided.

20. GOOGLE maintains electronic records pertaining to the individuals and companies for which they maintain subscriber ACCOUNT. These records include account access information, e-mail transaction information, and account application information. Subscribers to GOOGLE may access their ACCOUNT on servers maintained and/or owned by GOOGLE from any computer connected to the Internet located anywhere in the world. Any e-mail that is sent to a GOOGLE subscriber is stored in the subscriber's "mail box" on GOOGLE's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by GOOGLE. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on GOOGLE's servers indefinitely.

21. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to GOOGLE's servers, and then transmitted to its end destination. GOOGLE users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the GOOGLE

server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at GOOGLE, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

22. A GOOGLE subscriber can store files, including e-mails and image files, on servers maintained and/or owned by GOOGLE. E-mails and image files stored on a GOOGLE server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the GOOGLE server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the GOOGLE server.

## **PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT**

1. On October 28th, 2014, Tuesday: I received a Cybertip from the National Center for Missing & Exploited Children (NCMEC) in regards to a subject that uploaded an image of Child Pornography to an email in GMAIL. GOOGLE scans any attachments that have been uploaded to their emails for viruses and images of suspected child pornography. GOOGLE reported the incident to NCMEC on 09/15/14 12:14 UTC. GOOGLE reported to NCMEC that the email in question may or may not have been sent. The upload of the Child Pornography image was on September 15th, 2014 at 12:13:15 UTC from IP address 71.193.54.224. The user name for the account was LJCROW006@GMAIL.COM and the secondary email listed was LJC006@DBZMAIL.COM.

2.  The NCMEC Cybertip line is an on-line reporting mechanism for cases of child sexual exploitation including child pornography, on-line enticement of child for sex acts, molestation of children outside the family, sex tourism of children, child victims of prostitution, and unsolicited, obscene materials sent a child.  NCMEC staff then reviews reports, sometimes doing basic analyst work, and then distributes the Cybertip to the appropriate investigatory agency for review.

3.  I reviewed the image that had been uploaded and attached to the SUBJECT ACCOUNT.

   a. **b2tYw.png**

      This was a color image of a female child that was approximately 3-5 years old lying on her back. There was an erect adult male penis in the anus of the child.

4.  **October 29th, 2014:** I checked a public database and determined that the IP address 71.193.54.224 that was used to upload the image of child pornography was assigned to Comcast Cable Communications.

5.  **October 29th, 2014:** I sent Comcast Cable Communications an administrative subpoena to determine who the subscriber was for IP address 71.193.54.224 at 12:13:15 UTC on September 15th, 2014.

6. **October 29th, 2014:** I received the subpoena results and it stated the subscriber information was:

> Susan Zavala
>
> 3808 Presidio St.
>
> Sacramento, Ca 95838
>
> 916-274-4652

7. A KPF address check for the residence at 3808 Presidio St, Sacramento Ca 95838 revealed that a subject named Kenneth Miller (DBO 11/26/1990) was on formal searchable probation for PC 288(a) until 05/17/2017 and was a registered sex offender. Kenneth Miller listed the address of 3808 Presidio St, Sacramento Ca 95838 to probation as his current address.

8. Kenneth Miller was contacted at his residence of 3808 Presidio St, Sacramento Ca 95838 on 10/21/2014 by Deputy Probation Officer Jungkeit during a compliance check.

9. A search of social media with the email LJC006@DBZMAIL.COM showed a Facebook profile page https://www.facebook.com/people/Leon-Crow/100004378576561 of a subject that had his name listed as Leon Crow. The profile picture that the subject had listed was similar to the KPF photograph of Kenneth Miller.

10. **11/03/14, Monday:** I contacted Deputy Probation Officer Jungkeit and advised him of my investigation.

11. **11/12/2014, Wednesday:** Detectives from the Sacramento Valley Hi-Tech Task Force along with Sacramento County Probation Officers conducted a probation search of Kenneth Miller's address at 3808 Presidio St, Sacramento Ca 95838. Several computers were seized as evidence from the probation search.

12. I spoke with Kenneth Miller under Miranda advisement. Kenneth stated that he downloads and uploads images of kids involved in sex acts. Kenneth admitted that he is the owner of the SUBJECT ACCOUNT and LJC006@DBZMAIL.COM. Kenneth Miller admitted to uploading an image of a child involved in a sex act to SUBJECT ACCOUNT but did not send the email. Kenneth Miller stated that his GMAIL account was shut down after he uploaded the image. Kenneth Miller admitted that some images of kids involved in sex might still be on a folder on the desktop that he has a user profile of CROW on but he deleted the rest of them.

13. The user account of CROW that Kenneth Miller uses will be searched due to his probation status. Scott Selzam who is the owner of the computer that Kenneth Miller uses gave consent to search the rest of the computer.

14. Deputy Probation Officer Jungkeit arrested Kenneth Miller on a probation violation and he was booked into the Sacramento County Main Jail.

15. The computers taken during the probation search are currently being forensically analyzed.

16. Based upon your Affiant's previous investigative experience related to child pornography investigations, including investigations of subjects who have distributed child pornography via the Internet that I have been the investigating officer of, your Affiant is aware that individuals who share and distribute child pornography are often child pornography collectors who have escalated their activity from anonymously obtaining

free images of child pornography widely available in various locations on the Internet to proactively distributing images they have collected, often for the purposes of trading images of child pornography with others as a method of adding to their own collections. Individuals involved in the distribution of child pornography are also known to continue to obtain free images of child pornography found elsewhere on the Internet, e.g. in Newsgroups and on "free" web sites.

17. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

    a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

    b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home

or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica[3], and videotapes for many years.

d.  Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e.  Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence form other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.  Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

18. The undersigned Affiant submits that there is probable cause to believe that the individual found to be utilizing the SUBJECT ACCOUNT is a collector of child pornography. This opinion is based upon the fact that the suspect computer has been identified pursuant to this investigation as an instrumentality in the distribution of child pornography and your Affiant's knowledge and investigative

---

[3]  "Child Erotica" as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

experience related to the habits and tendencies of child pornography distributors. Your Affiant also bases this opinion on his investigative experience gained during the execution of previous search warrants related to individuals identified as distributors of child pornography in unrelated investigations, namely, that individuals identified as distributors of child pornography have been found to be in possession of massive quantities of child pornography.

19. Finally, based upon the conduct of individuals involved in the collection of child pornography set forth above, namely that they tend to maintain their collections at a secure, private location for long periods of time, there is a probable cause to believe that evidence of the offenses of receiving and possessing child pornography is currently located in the SUBJECT ACCOUNT.

20. Based upon the abovementioned information, I believe that the SUBJECT ACCOUNT has been used to distribute child pornography and that evidence of that crime is likely to be found in the SUBJECT ACCOUNT maintained by the PROVIDER.

## INFORMATION TO BE SEIZED

21. Evidence and fruits of violations of 18 U.S.C. § 2422 (b) will be seized by law enforcement from the SUBJECT ACCOUNT upon receipt of the information from the PROVIDER as described in Section II above as follows:

    a.  All subscriber information, including:
        i.  names, email addresses, and screen names;
       ii.  addresses;
     iii.  detailed billing records or records of session times and durations;
     iv.  length of service (including start date) and types of service utilized;
      v.  telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

      vi.  the means and source of payment for such service (including any credit card or bank account number).

b.  For the period of August 1st, 2014, to the date this warrant is acted upon by THE PROVIDERS, all transactional information, including:

      i.  logs of Internet Protocol ("IP") address connections, including dates, times, and time zones

      ii.  address books;

      iii.  buddy lists; and

      iv.  account history, including contacts with support services and records of actions taken online by the subscriber or the PROVIDER support staff in connection with the service.

c.  For the period of August 1st, 2014, to the date this warrant is acted upon by THE PROVIDER, the contents of electronic or wire communications held in ACCOUNT of the persons assigned the screen names identified in Attachment B, including:

      i.  all electronic or wire communications (including e-mail text, attachments, and embedded files) in electronic storage by THE PROVIDER, or held by PROVIDER as a remote computing service (if any), within the meaning of the Stored Communications Act;

      ii.  all photos, files, data, or information in whatever form and by whatever means they have been created or stored.

22. I ask that the Court order the PROVIDER to deliver the information set forth above within 10 days of the service of this warrant and that the PROVIDER send the information via facsimile and United States mail.

## CONCLUSION

23. Based upon the above information, there is probable cause to believe that
violations of 18 U.S.C. 2422(b), which makes it a crime to use the mail or any
facility of interstate or foreign commerce to knowingly persuades, induces, entices,
or coerces any individual who has not attained the age of 18 years, to engage in
prostitution or any sexual activity for which any person can be charged with a
criminal offense, or attempts to do so, or attempt to do so have been violated, and
that property, evidence, fruits and instrumentalities of these offenses, more fully
described in Attachment B of this Affidavit, are located in the SUBJECT
ACCOUNT. This Affiant requests authority to seize such material.

24. Based upon the foregoing, this Affiant respectfully requests that this Court issue a
search warrant for the SUBJECT ACCOUNT, more particularly described in
Attachment A, authorizing the seizure of the items described in Attachment B.

25. The United States requests that the Court order this search warrant and search
warrant affidavit be kept under seal until further order of the Court, with the
exception that a copy of the search warrant will be given to the PROVIDER.
Without such an order, individuals may conceal, damage, or destroy evidence
sought by this search warrant prior to its execution.

RYAN SMITH
Special Deputy United States Marshal
Sacramento ICAC Task Force

Approved as to form.

HEIKO COPPOLA
Assistant United States Attorney

Subscribed and sworn to before me this
_10_ day of  December 2014

CAROLYN K. DELANEY
United States Magistrate Judge
Eastern District of California
Sacramento, California

14-260661
305I-SC-                                20

## **Attachment A**

The location to be searched is more fully described as follows:

Information associated with Google e-mail accounts listed below that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Ampitheater Parkway, Mountain View, California 94043.The account to be searched is LJCROW006@GMAIL.COM

## Attachment B

## Items to Be Seized

For the LJCROW006@GMAIL.COM and any other screen names associated with those accounts, and for all other accounts and screen names associated, the following records maintained by GOOGLE Inc. for each account:

1.  All subscriber information, including:
    a.  names, email addresses, and screen names;
    b.  addresses;
    c.  detailed billing records or records of session times and durations;
    d.  length of service (including start date) and types of service utilized;
    e.  telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
    f.  the means and source of payment for such service (including any credit card or bank account number).

2.  For the period of August 1st, 2014, to the date this warrant is acted upon by GOOGLE, all transactional information, including:
    a.  logs of Internet Protocol ("IP") address connections, including dates, times, and time zones, and any ANI information made available to GOOGLE;
    b.  address books;
    c.  buddy lists; and
    d.  account history, including contacts with GOOGLE support services and records of actions taken online by the subscriber or by GOOGLE support staff in connection with the service.

3.  For the period of August 1st, 2014, to the date this warrant is acted upon by GOOGLE, the contents of electronic or wire communications held in accounts of the persons assigned the screen names identified in paragraph 1, including:

a. all electronic or wire communications (including e-mail text, attachments, and embedded files) in electronic storage by GOOGLE, or held by GOOGLE as a remote computing service (if any), within the meaning of the Stored Communications Act;

b. all photos, files, data, or information in whatever form and by whatever means they have been created or stored.

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the<br>"LJCROW006@GMAIL.COM" email account<br>and stored at premises controlled by Google. | )<br>)<br>)<br>)<br>)<br>) |

Case No.   **2:14 - SW   6 8 1   CKD**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____**EASTERN**_____ District of _____**CALIFORNIA**_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____December 24, 2014_____
                                                                                                          *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.       ☐ at any time in the day or night as I find reasonable cause has been
                                                                                      established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Carolyn K. Delaney, or the duty magistrate_____ .
                        *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐for _____ days *(not to exceed 30).*

                                                      ☐until, the facts justifying, the later specific date of _____ .

Date and time issued:   12/10/2014 9:00 am          *11:15 am*          _____
                                                                                                                        *Judge's signature*

City and state:     Sacramento, California          Hon. Carolyn K. Delaney, United States Magistrate Judge
                                                                                                *Printed name and title*

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date.

_____  _____
*Signature of Judge*                      *Date*

## Attachment A

The location to be searched is more fully described as follows:

Information associated with Google e-mail accounts listed below that are stored at premises owned, maintained, controlled, or operated by Google, a company headquartered at 1600 Ampitheater Parkway, Mountain View, California 94043.The account to be searched is LJCROW006@GMAIL.COM

**Attachment B**

**Items to Be Seized**

For the LJCROW006@GMAIL.COM and any other screen names associated with those accounts, and for all other accounts and screen names associated, the following records maintained by GOOGLE Inc. for each account:

1. All subscriber information, including:
   a. names, email addresses, and screen names;
   b. addresses;
   c. detailed billing records or records of session times and durations;
   d. length of service (including start date) and types of service utilized;
   e. telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and
   f. the means and source of payment for such service (including any credit card or bank account number).

2. For the period of August 1st, 2014, to the date this warrant is acted upon by GOOGLE, all transactional information, including:
   a. logs of Internet Protocol ("IP") address connections, including dates, times, and time zones, and any ANI information made available to GOOGLE;
   b. address books;
   c. buddy lists; and
   d. account history, including contacts with GOOGLE support services and records of actions taken online by the subscriber or by GOOGLE support staff in connection with the service.

3. For the period of August 1st, 2014, to the date this warrant is acted upon by GOOGLE, the contents of electronic or wire communications held in accounts of the persons assigned the screen names identified in paragraph 1, including:

a. all electronic or wire communications (including e-mail text, attachments, and embedded files) in electronic storage by GOOGLE, or held by GOOGLE as a remote computing service (if any), within the meaning of the Stored Communications Act;

b. all photos, files, data, or information in whatever form and by whatever means they have been created or stored.